WO                                                                                                    KM

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

Victor Zhaquis Jones,

                    Plaintiff,

v.

S. Henry, et al.,

                    Defendants.

No.   CV 21-00667-PHX-JAT (JZB)

**ORDER**

On April 16, 2021, Plaintiff Victor Zhaquis Jones, who is confined in the Arizona State Prison Complex-Eyman, filed a pro se civil rights Complaint pursuant to 42 U.S.C. § 1983.  In an April 23, 2021 Order, the Court directed Plaintiff to pay the filing and administrative fees or file an Application to Proceed In Forma Pauperis.  On May 6, 2021, Plaintiff paid the filing and administrative fees.  In a June 10, 2021 Order, the Court dismissed the Complaint because Plaintiff had failed to state a claim.  The Court gave Plaintiff 30 days to file an amended complaint that cured the deficiencies identified in the Order.

On June 28, 2021, Plaintiff filed a First Amended Complaint (Doc. 7).  The Court will order Defendants Henry and Centurion to answer the First Amended Complaint.

## I.      Statutory Screening of Prisoner Complaints

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity.  28

U.S.C. § 1915A(a).  The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1)–(2).

A pleading must contain a "short and plain statement of the claim *showing* that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2) (emphasis added).  While Rule 8 does not demand detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.* at 679.  Thus, although a plaintiff's specific factual allegations may be consistent with a constitutional claim, a court must assess whether there are other "more likely explanations" for a defendant's conduct.  *Id.* at 681.

But as the United States Court of Appeals for the Ninth Circuit has instructed, courts must "continue to construe *pro se* filings liberally."  *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010).  A "complaint [filed by a pro se prisoner] 'must be held to less stringent standards than formal pleadings drafted by lawyers.'"  *Id.* (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam)).

## II.   First Amended Complaint

Plaintiff names the following Defendants in his three-count First Amended Complaint: Deputy Warden S. Henry, Tactical Support Unit (TSU) Officer John Doe, and Centurion, LLC.  Plaintiff seeks injunctive relief and money damages.

In Count One, Plaintiff alleges Defendant Henry violated his Eighth Amendment rights when he ordered his officers to use excessive force on inmates after a riot had already been quelled.  Plaintiff claims that on November 25, 2020, between 5:30 p.m. and 9:30 p.m. there was a disturbance between inmates and Cook Unit Staff "concerning an excessive force on an inmate who refused to wear his COVID mask . . . ."  (Doc. 7 at 3.)[1] A large group of inmates gathered to confront the officer and refused to comply with any orders.  Plaintiff claims he was lying on his bunk in his dorm when he heard staff yell over the loudspeaker for all inmates in the yard to immediately return to their dorms and lock down.  (*Id.*)  Plaintiff looked out of the window and saw TSU officers "shooting off shock grenades that were exploding and Plaintiff saw tear gas canisters hitting the ground and giving off tear gas."  (*Id.*)  Plaintiff also saw Defendant Henry speak to the lead TSU Officer and then saw that officer order a group of TSU officers into a formation in the yard. (*Id.* at 4.)  Plaintiff then saw Defendant Henry walk with the lead officer to the end of the formation and saw the officers "begin their March towards Building Eight (8) door entry." (*Id.*)

Plaintiff alleges that "minutes later," TSU officers rushed into his dorm and the lead officer yelled to inmates to "get off their bunks and for all inmates to line up in the middle of the dorm run."  (*Id.*)  Plaintiff and other inmates complied.  The TSU officer began to give instructions for inmates to line up and told the inmates that if they made any sudden moves, gave any "back talk," or if the officers felt an inmate was a threat to them, the inmate would be thrown to the ground.  (*Id.* at 5.)  The officers informed inmates that under Defendant Henry's authority, the officers could "use whatever force [was] needed for [inmates] to comply with . . . instructions."  (*Id.*)  Plaintiff alleges Henry "instructed and ordered the TSU officers and gave them his authority to use excessive force against him and other inmates, in violation of Plaintiff's Eighth Amendment rights," and did so "maliciously and sadistically to cause him and other inmates harm, which did happen to

---

[1] The citation refers to the document and page number generated by the Court's Case Management/Electronic Case Filing system.

Plaintiff." (*Id.* at 6.)  Plaintiff asserts Defendant Henry "personally participated in a deprivation of Plaintiff's constitutional rights, was aware of this deprivation and failed to act when his officers' action became too excessive." (*Id.*)  Plaintiff claims that the force used by officers "was not applied in a good faith effort to maintain or restore order on the Cook Unit prison, this was unnecessary, for the riot was already quelled." (*Id.*)

In Count Two, Plaintiff alleges Defendant Doe violated his Eighth Amendment when he used excessive force on Plaintiff.  Plaintiff alleges that after he and other inmates were ordered to line up outside of their cells, Defendant Doe ordered Plaintiff and other inmates to be stripped down in the dorm run showers and toilet area. (*Id.* at 10.)  Plaintiff was taken to the shower and ordered to strip down by another officer.  After Plaintiff put his clothes back on, a TSU officer tied his hands behind his back with plastic ties.  Plaintiff claims the officer pulled the ties too tight, cut into his wrists and causing both of his hands to go numb. (*Id.*)  Plaintiff told the officer the ties were too tight and asked for them to be loosened; the officer told him to "shut up and put his chin back on his chest." (*Id.* at 10-11.)  Plaintiff asked to speak with a supervisor.  Defendant Doe then "came and said, is there a problem, the officer said we got a hero here that won't shut-up, then John Doe said to the officer, I'll handle this problem." (*Id.* at 11.)

Defendant Doe took Plaintiff to the front of the building where he yelled at Plaintiff "what is your problem[?]" while holding Plaintiff  with the help of another officer. (*Id.*)  Plaintiff tried to move his hands to show the officers he was bleeding from the plastic ties, but Defendant Doe "yanked" him and threw him to the ground "face first." (*Id.*)  Plaintiff tried to raise his body up to lay on his back but Defendant Doe "pick[ed] Plaintiff up off the ground and slammed Plaintiff down again on his shoulders." (*Id.*)  Plaintiff claims he screamed and started to struggle "as the pain was extreme." (*Id.*)  Plaintiff was "forced on his stomach by John Doe who put his knee in back of Plaintiff's neck causing him to struggle to breath and Plaintiff was in the dirt." (*Id.* at 11-12.)  Plaintiff tried to tell Defendant Doe and the other officer that he could not breath "and dust was choking him as he was inhaling dust in his nose." (*Id.* at 12.)  Plaintiff alleges Defendant Henry "told John

Doe to let him up and to take Plaintiff to the Cook Unit Medical Unit for his injuries." (*Id.*) Another officer took Plaintiff to the medical unit.

Plaintiff claims Defendant Doe violated his Eighth Amendment rights by using excessive physical force that "was applied in a bad-faith effort to maintain and make an example of Plaintiff to the other inmates that were sitting in the dirt in front of Building 8." (*Id.*) Plaintiff asserts Defendant Doe's actions were malicious, sadistic, and intended to cause harm. (*Id.*) Plaintiff further contends Defendant Henry ordered Defendant Doe to use whatever force it took to "bring peace on Cook Unit, because John Doe said that Defendant S. Henry gave him the authority to use excessive force while Plaintiff and the others were standing in line inside the dorm run." (*Id.*)

In Count Three, Plaintiff alleges Defendant Centurion violated his Eighth Amendment rights by failing to provide adequate medical care. Plaintiff claims that after he was brought to the medical unit, a nurse examined his injuries and asked how Plaintiff was injured. (*Id.* at 14.) The TSU officer said Plaintiff failed to "follow directions and that Plaintiff thinks he's a bad ass." (*Id.*) The nurse asked Plaintiff how he felt and he told the nurse he was in extreme pain and "it felt like his shoulder blades were broken." (*Id.*) The nurse stated she could see "swollen shoulders and a large lump on his right shoulder, and that Plaintiff['s] face was swollen and that there [were] cuts on both his wrist[s]." (*Id.*) Plaintiff asked the TSU officer to remove the plastic ties from his wrists. (*Id.*) The officer did so, and the nurse said Plaintiff's wrists were bleeding because the ties were too tight. (*Id.*) Plaintiff claims the nurse was concerned about the swelling in his shoulder and back and although Plaintiff needed medical treatment, none was available because Defendant Henry had ordered the rest of the medical staff to leave the unit. (*Id.*) The nurse told the TSU officer that Plaintiff needed to go to the hospital for his injuries, but that "due to [the] situation on the ground . . . it is Centurion of Arizona LLC policy that medical staff can put off treatment for 48 to 72 hours." (*Id.* 14-15) The nurse told Plaintiff that if he started to cough up blood or have breathing difficulty, to have an officer contact the medical unit. (*Id.* at 15) Plaintiff asked the nurse to inform Defendant Henry that he needed to go to the

hospital and the nurse told him "you do need treatment, but you can wait until the next day in the hopes that your condition doesn't worsen overnight." (*Id.*)

As Plaintiff left the medical unit, his nose began to bleed. (*Id.* at 15.)  The nurse helped stopped the bleeding "and Plaintiff yelled [that] he needed medical treatment and the TSU officer pulled Plaintiff up from his chair and forced Plaintiff['s] body against the . . . wall as Plaintiff screamed in pain, the TSU officer said calm down dude." (*Id.*) Plaintiff asserts his injuries were "so bad that he beg[a]n coughing up blood," and was bleeding from his nose, mouth and wrists. (*Id.*)  At 1:00 am, Plaintiff told an officer he needed medical treatment and the officer told him there were no medical staff on the unit until morning. (*Id.*)

Plaintiff contends Defendant Centurion violated his Eighth Amendment rights by not having sufficient staff present to examine Plaintiff until December 5, 2020, nearly 10 days after his injuries. (*Id.* at 16.)  Plaintiff alleges Centurion's policies also "allowed the nurse on November 25, 2020, to deny and delay Plaintiff's medical treatment due to riot situation on that date" and that as a result, Plaintiff suffered permanent injuries. (*Id.* at 17.) Plaintiff further claims he requested x-rays and MRIs, "and was denied initially." (*Id.*) Plaintiff claims he has suffered trauma symptoms such as nightmares and flashbacks, but Centurion's staff "denied treatment, therapy or coping skills." (*Id.*)

### III.   Failure to State a Claim

To state a claim under § 1983 against a private entity performing a traditional public function, such as providing medical or dental care to prisoners, a plaintiff must allege facts to support that his constitutional rights were violated as a result of a policy, decision, or custom promulgated or endorsed by the private entity. *See Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1138-39 (9th Cir. 2012); *Buckner v. Toro*, 116 F.3d 450, 452 (11th Cir. 1997).  A plaintiff must allege the specific policy or custom and how it violated his constitutional rights.  A private entity is not liable simply because it employed individuals who allegedly violated a plaintiff's constitutional rights. *See Tsao*, 698 F.3d at 1139.

In Count Three, Plaintiff claims that he requested x-rays, MRI scans, and mental

health treatment, but was denied such treatment by Defendant Centurion's staff.  Defendant Centurion is not liable simply because it employs the individuals who denied Plaintiff these medical services, and Plaintiff does not allege he was denied these services as a result of a policy or custom promulgated by Centurion.  Accordingly, this portion of Count Three fails to state a claim and will be dismissed.

## IV.    Claims for Which an Answer Will Be Required

Liberally construed, Plaintiff has adequately stated Eighth Amendment excessive force claims against Defendants Henry and Doe, and an Eighth Amendment medical claim against Defendant Centurion for its alleged policies of understaffing the medical unit and of delaying medical care in riot situations.  The Court will require Defendants Henry and Centurion to answer the First Amended Complaint.

Although Plaintiff has stated a claim against Defendant Doe, the Court will not require service on Defendant Doe at this time because it is, in most instances, impossible for the United States Marshal or his designee to serve a summons and complaint upon an anonymous defendant.  However, the Court will not dismiss the claim against Defendant Doe at this time.

The Ninth Circuit has held that where identity is unknown prior to the filing of a complaint, the plaintiff should be given an opportunity through discovery to identify the unknown defendants, unless it is clear that discovery would not uncover the identities, or that the complaint would be dismissed on other grounds. *Wakefield v. Thompson*, 177 F.3d 1160, 1163 (9th Cir. 1999) (citing *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980)). The Court will allow Plaintiff 120 days in which to discover the actual name of Defendant Doe, through subpoena or otherwise, and to substitute the Defendant's actual name by filing a "notice of substitution." *See Wakefield*, 177 F.3d at 1163.  The Court may dismiss without prejudice Defendant Doe if Plaintiff fails to timely file a notice of substitution, unless Plaintiff seeks and is granted an extension of time.

. . . .

. . . .

## V.      Warnings

### A.      Address Changes

Plaintiff must file and serve a notice of a change of address in accordance with Rule 83.3(d) of the Local Rules of Civil Procedure.  Plaintiff must not include a motion for other relief with a notice of change of address.  Failure to comply may result in dismissal of this action.

### B.      Copies

Because Plaintiff is currently confined in an Arizona Department of Corrections unit subject to General Order 14-17, Plaintiff is not required to serve Defendants with a copy of every document he files or to submit an additional copy of every filing for use by the Court, as would ordinarily be required by Federal Rule of Civil Procedure 5 and Local Rule of Civil Procedure 5.4.  Plaintiff may comply with Federal Rule of Civil Procedure 5(d) by including, with every document he files, a certificate of service stating that this case is subject to General Order 14-17 and indicating the date the document was delivered to prison officials for filing with the Court.

**If** Plaintiff is transferred to a unit other than one subject to General Order 14-17, he will be required to: (a) serve Defendants, or counsel if an appearance has been entered, a copy of every document that he files, and include a certificate stating that a copy of the filing was served; and (b) submit an additional copy of every filing for use by the Court. *See* Fed. R. Civ. P. 5(a) and (d); LRCiv 5.4.  Failure to comply may result in the filing being stricken without further notice to Plaintiff.

### C.      Possible Dismissal

If Plaintiff fails to timely comply with every provision of this Order, including these warnings, the Court may dismiss this action without further notice. *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1260-61 (9th Cir. 1992) (a district court may dismiss an action for failure to comply with any order of the Court).

**IT IS ORDERED:**

(1)      The portion of Count Three relating to specific medical treatments is

**dismissed** without prejudice.

(2)     Defendants Henry and Centurion must answer the remaining portions of the First Amended Complaint.

(3)     Within 120 days from the filing date of this Order, Plaintiff must file a "Notice of Substitution," substituting Defendant Doe's actual name.  The Court may dismiss without prejudice Defendant Doe if Plaintiff fails to timely file a notice of substitution, unless Plaintiff seeks and is granted an extension of time.

(4)     The Clerk of Court must send Plaintiff this Order, and a copy of the Marshal's Process Receipt & Return form (USM-285) and Notice of Lawsuit & Request for Waiver of Service of Summons form for Defendants Henry and Centurion.

(5)     Plaintiff must complete[2] and return the service packet to the Clerk of Court within 21 days of the date of filing of this Order.  The United States Marshal will not provide service of process if Plaintiff fails to comply with this Order.

(6)     If Plaintiff does not either obtain a waiver of service of the summons or complete service of the Summons and First Amended Complaint on a Defendant within 90 days of the filing of the Complaint or within 60 days of the filing of this Order, whichever is later, the action may be dismissed as to each Defendant not served.  Fed. R. Civ. P. 4(m); LRCiv 16.2(b)(2)(B)(ii).

(7)     The United States Marshal must retain the Summons, a copy of the First Amended Complaint, and a copy of this Order for future use.

(8)     The United States Marshal must notify Defendants Henry and Centurion of the commencement of this action and request waiver of service of the summons pursuant to Rule 4(d) of the Federal Rules of Civil Procedure.  The notice to Defendants must include a copy of this Order.

. . . .

---

[2] If a Defendant is an officer or employee of the Arizona Department of Corrections, Plaintiff must list the address of the specific institution where the officer or employee works.  Service cannot be effected on an officer or employee at the Central Office of the Arizona Department of Corrections unless the officer or employee works there.

(9)     A Defendant who agrees to waive service of the Summons and First Amended Complaint must return the signed waiver forms to the United States Marshal, not the Plaintiff, **within 30 days of the date of the notice and request for waiver of service** pursuant to Federal Rule of Civil Procedure 4(d)(1)(F) to avoid being charged the cost of personal service.

(10)    The Marshal must immediately file signed waivers of service of the summons.  If a waiver of service of summons is returned as undeliverable or is not returned by a Defendant within 30 days from the date the request for waiver was sent by the Marshal, the Marshal must:

(a)     personally serve copies of the Summons, First Amended Complaint, and this Order upon Defendant pursuant to Rule 4(e)(2) and or Rule 4(h)(1) of the Federal Rules of Civil Procedure; and

(b)     within 10 days after personal service is effected, file the return of service for Defendant, along with evidence of the attempt to secure a waiver of service of the summons and of the costs subsequently incurred in effecting service upon Defendant.  The costs of service must be enumerated on the return of service form (USM-285) and must include the costs incurred by the Marshal for photocopying additional copies of the Summons, First Amended Complaint, or this Order and for preparing new process receipt and return forms (USM-285), if required.  Costs of service will be taxed against the personally served Defendant pursuant to Rule 4(d)(2) of the Federal Rules of Civil Procedure, unless otherwise ordered by the Court.

(11)    Defendants must answer the First Amended Complaint or otherwise respond by appropriate motion within the time provided by the applicable provisions of Rule 12(a) of the Federal Rules of Civil Procedure.

(12)    Any answer or response must state the specific Defendant by name on whose behalf it is filed.  The Court may strike any answer, response, or other motion or paper that does not identify the specific Defendant by name on whose behalf it is filed.

1   (13) This matter is referred to Magistrate Judge John Z. Boyle pursuant to Rules

2 72.1 and 72.2 of the Local Rules of Civil Procedure for all pretrial proceedings as

3 authorized under 28 U.S.C. § 636(b)(1).

4   Dated this 6th day of August, 2021.

James A. Teilborg
Senior United States District Judge